THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES LEE DOUGLAS, Defendant-Appellant.

Fourth District   No. 14191

Opinion filed March 17, 1978.

150

REARDON, J., dissenting.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Vermilion County defendant James Lee Douglas was convicted of the offenses of possession of cocaine, possession of morphine and monoacetylmorphine. He was sentenced to concurrent terms of imprisonment of 3 to 9 years for possession of cocaine and 6 years 8 months to 20 years for possession with intent to deliver morphine and monoacetylmorphine.

Upon appeal defendant maintains that (1) he was prejudiced when a police officer testified that, after he had been advised of his *Miranda* rights, he refused to make a statement, (2) he was denied a fair trial where the State made numerous references to heroin and to his possession of a gun when neither was relevant to the charges, and (3) the sentences were excessive.

Much of the evidence was undisputed. The defendant was stopped while driving on an interstate highway by police officers possessing a warrant. Once defendant was out of his car, he told the officers that he had over $5000 in a sock in a shaving kit in the car and wanted the officer to count it so that it wouldn't be stolen. Nothing was found on defendant's person but the contraband substances upon which the charges were based

were found in the car. Among the items found were a vial containing 1.7 grams of morphine and monoacetylmorphine and 51 small packets of the same substance. The latter was found in a change purse in a pocket of a suit in the car. Also found was a bottle containing .03 grams of cocaine.

Evidence was presented that when defendant was taken into custody at the police station and admonished of his *Miranda* rights, he asked an officer what the officer had heard about him on the street and the officer responded "I hear you sell heroin" to which the defendant responded "I live well, I eat well, I dress good" and also that he was "the man." Two other officers recollected that the defendant said "I am well, I eat well, and I sell the best."

The allegedly prejudicial testimony of the police officer occurred after that officer had related the conversation that took place following the giving of the *Miranda* warnings. The officer stated that, "I asked him if he wanted to make a statement concerning the charges that he had been charged with at which time he said no and was returned to incarceration." An objection by defense counsel was sustained but his motion for a mistrial was denied, the trial court offering to instruct the jury concerning the defendant's right to remain silent if the defendant so requested. No such request was made. No mention of this testimony was made in closing argument.

■■ The parties do not dispute that admission of evidence of an accused's silence after receipt of *Miranda* warnings is a violation of the accused's right to remain silent (*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632). However, the State argues that because the prosecution did not focus attention upon this testimony and because of the weight of the proof of guilt the constitutional error was harmless beyond a reasonable doubt within the doctrine of *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824. Where the evidence of guilt is overwhelming the admission of such testimony is harmless beyond a reasonable doubt. (*People v. Buckley* (1976), 41 Ill. App. 3d 989, 355 N.E.2d 207; *People v. Marchese* (1975), 32 Ill. App. 3d 872, 336 N.E.2d 795.) Here, the evidence that defendant possessed the cocaine was overwhelming.

■■ The evidence that he possessed the other substance with the intent to deliver was based upon the circumstances of the quantity of substances in the car, the money defendant possessed and his conversation with the officers. Although sufficient to convict, this proof was not overwhelming. In *Chapman,* the United States Supreme Court indicated that overwhelming evidence was not the only ground by which constitutional error might be determined to be harmless beyond a reasonable doubt. In *People v. Tice* (1977), 45 Ill. App. 3d 639, 359 N.E.2d 1228, as in the

instant case, testimony was elicited on direct examination that the defendant broke off post-*Miranda* warning in-custody interrogation and refused to talk further. As here, no comment about the testimony was made during the trial. We concluded that the jury could not have been influenced by the testimony. We reach the same conclusion here and rule that the testimony was harmless beyond a reasonable doubt as to all charges.

■■■ Reference to heroin arose twice during testimony at trial: Once when an officer stated that he had heard that defendant sold heroin in response to defendant's inquiry as to what that officer had heard about him in the street and again when another officer testified that the tin foil packets found were of the type that "a lot of heroin dealers package in." The first reference was a necessary part of a conversation whereby defendant was stated to have made an admission implying that he was dealing in drugs. This evidence was relevant to defendant's intention with regard to the controlled substances found in his possession at the time of arrest. The second reference regarding the description of the packets was objected to by the defense with the trial court properly sustaining the objection. Although that testimony did create some innuendo that the defendant was a heroin dealer because of his possession of the packets, we do not deem the error to be reversible.

Reference to heroin was also made during closing argument when the prosecutor described monoacetylmorphine as a substance that might be created in an unsuccessful attempt to make heroin. A defense objection was overruled. In his closing argument defense counsel admonished the State for the references to heroin in evidence and argument. On rebuttal, without objection, the prosecutor referred to the testimony by a chemist that monoacetylmorphine might be produced in an attempt to produce morphine. The prosecutor further stated that if its witnesses had wished to fabricate testimony they could have testified that the packets they pulled out of the suit contained heroin. Objection to the latter comment was sustained.

■■ Defendant attempts to analogize the instant situation to that in *People v. Trotter* (1967), 84 Ill. App. 2d 388, 228 N.E.2d 467, where the court ruled to be improper the conduct of the prosecutor in repeatedly referring to the defendant charged with possession of narcotics as a dope peddler although no competent evidence of the defendant's selling of narcotics had been introduced. Here, the testimony that monoacetylmorphine might be produced in an attempt to produce heroin was not improper as a description of the substance. Accordingly, comment upon this proper evidence was not error. We do not find the prosecutor's argument that the officers could have fabricated testimony that the packets contained heroin to be reversible error. The irrelevant argument creates no innuendo that the packets did in fact contain heroin.

One of the arresting officers testified that upon stopping defendant and defendant's stepping out of his car, he, the officer, patted defendant down for weapons because he had heard that defendant might be armed. Defendant's objection to this testimony was overruled but the court instructed the jury that the statement by the officer as to what others had told him should be considered only to explain the officer's conduct but not for the truth of the hearsay statement. Prior to this testimony, one officer had testified without objection that a revolver had been found in an open shaving bag in the car and later two other officers testified to the same thing. At trial the objection to the testimony of the officer making the pat down was that it created an innuendo that the defendant was armed. On appeal the contention is that all the testimony about the presence of the gun presented prejudicial testimony about an offense unrelated to the charges for which the defendant was on trial. The trial court had previously severed an alleged possession of weapons charge.

■■ We agree with defendant that the testimony by the officer that he patted defendant down because he had been told he was likely to have a weapon was improper. The officer's grounds for detaining, arresting or patting down defendant were not in issue and the officer's statement that defendant was likely to have a gun was obviously prejudicial. The limiting instruction was not likely to fully remove the prejudice from the juror's minds. We do not deem the error to be reversible nor to be encompassed within the argument presented on review that the court improperly permitted introduction of evidence of other crimes.

The evidence of the existence of the revolver in the car did, of course, tend to show the commission of another crime but we do not agree with defendant that the offense was unrelated to that for which he was on trial. The fact that defendant had a gun in the car with him would have at least slight probative value on the question of whether he knew that the substances he was transporting were contraband and upon whether he intended to make delivery of those substances. The failure of the defendant to object to the introduction of evidence of his possession of the gun prevented the trial court from having an opportunity to weigh the probative value of this evidence against its prejudicial effect.

■■ The record before us is not entirely free of error most of which was completely beyond the control of the judge. The overwhelming weight of the evidence on the charge for which a conviction for possession was obtained clearly precludes our consideration of any error as being reversible as to that charge. The evidence of guilt upon the charges of possession with intent to deliver was also substantial. The prejudicial effect of the errors was slight. We affirm the convictions.

Defendant maintains that the sentences were excessive because he had no prior felony conviction and because he became a seller of drugs only for a period of less than one year while he was himself addicted to heroin.

He claimed that during this time he was spending up to $100 per day to support this habit. At the same time he contended that the more than $5000 in cash which he possessed at the time of arrest was money he had saved from prior work and with which he was in the process of buying a house. Defendant's nephew testified that defendant had worked for him in a clothing store in the past doing good work. Some of this testimony was at variance with defendant's testimony as to the period when this work had taken place. The thrust of defendant's argument in mitigation was that he had broken the drug habit and would not be likely to become addicted again.

Although the prosecution recommended concurrent sentences of 3 to 9 years imprisonment, the court imposed the higher sentences of 6 years 8 months to 20 years imprisonment for the possession with intent to deliver charges. The court thoroughly explained its reasons emphasizing that the substances which defendant possessed with the intent to deliver were of a very high degree of toxicity and were of the type which created a severe community problem. The court noted that although the defendant had no prior felony conviction he had various misdemeanor convictions although none had occurred since 1970. The court also indicated that discrepancies in defendant's testimony in mitigation belied his contention that he had been selling narcotics to support his habit but was now completely rehabilitated.

The trial court indicated that it felt that consecutive sentences could be imposed but that although it would not do so, it considered this in imposing the concurrent sentences. Defendant argues that under section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a)) the court's interpretation was incorrect because consecutive sentences may not be imposed if the offenses "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." Regardless of who was correct, since consecutive sentences were not imposed, we find no error to have occurred because of this consideration.

The offenses for which defendant received the larger sentences were very serious. Sentences should be set aside as excessive only if there is an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) None was shown here.

Both the convictions and sentences from which appeal is taken are affirmed.


Affirmed.


MILLS, J., concurs.

Mr. JUSTICE REARDON, dissenting:

The intensity of my feeling about the sacredness of a fair trial has caused me to pause and ponder so that I do not overspeak and so that what is to follow can be read as an exercise in purposeful restraint.

Providing the right to a trial to one charged with the commission of a criminal offense was a significant milestone in the history of jurisprudence. More importantly was the evolution and expansion of that right by mandating that the trial be fair. The doctrine of the presumption of innocence of the defendant is a corollary to the requirement that proof of guilt be established beyond a reasonable doubt. Fundamental fairness and the high regard for individual dignity and personal liberty were the touchstones and the criteria for determining the fairness of that trial. In the implementation of these basic concepts, rules of court, statutory and decisional law have come into being. These procedures to implement evenness of handling are not requirements unto themselves but are to be viewed in their proper role as supportive of the more fundamental rights implicit in the goal that a trial be fair.

The defendant contends that in the process of his conviction errors occurred. The opinion of the majority recognizes and identifies these errors but deem them not to be reversible. With that conclusion I disagree.

To permit a police officer, by his testimony, to weaken the constitutional right of a defendant to remain silent tortures the fairness of the judicial process.

To conclude that the amount of money in the offensively boastful defendant's pockets is probative of identification of involvement in the illicit trafficking in drugs is not justified. The majority's concession that it is not overwhelmingly supportive of their conclusion is an understatement of some magnitude.

Permitting a police officer to testify, in response to prosecution questions, that tinfoil packets in defendant's possession were capable of being and were sometimes used by heroin dealers cannot be defended. My brothers concede it to be error since it may create some unfair innuendo. Evaluating innuendo is, at best, a speculative endeavor but the majority hastens to embrace the opportunity and find no difficulty in ruling and determining the admitted error to be not reversible.

Although not objected to in its entirety, the grossness of the prosecution's self-serving inferences in the State's final argument consisted, in my judgment, plain error of the most egregious variety.

The amazing statement of the prosecutor, in defense of the police testimony, that had the officers been so minded they could have perjured themselves by testifying that the packets contained heroin is nothing more nor less than an invitation to the jury to convict at any cost.

Vigorous prosecution is contemplated in our adversary system of justice, but when the prosecution relies on tactics such as demonstrated here I can only judge it to be reversible error of the most insidious kind. Under our system to attain the utopia of a perfect trial is unlikely since only mortals work here. Nevertheless the complete abandonment of the ideal is not to be tolerated. Cumulative error, although difficult to define, and in disrepute in the minds of some legal scholars, is still a viable doctrine in this State. I find it impossible to conclude that it did not occur here and, in my view that combination of error should be corrected by a reversal of the trial court. Therefore, I dissent.