383 S.E.2d 521

**STATE of West Virginia**

v.

**Keith Lawrence NICASTRO.**

No. 18581.

Supreme Court of Appeals of
West Virginia.

July 14, 1989.

Joseph A. Lazell, Asst. Atty. Gen., Charleston, for appellee.

Roger L. Thompson, Buckhannon, for Nicastro.

McHUGH, Justice:

This case is before the Court upon the appeal of Keith Lawrence Nicastro. The appellant was convicted of delivery of a controlled substance, with remuneration, in the Circuit Court of Upshur County. We have reviewed the petition for appeal, all matters of record, and briefs of the parties. We are of the opinion that the judgment of the Circuit Court of Upshur County should be affirmed in part, and this case is remanded for reconsideration of sentencing.

I

During the months of May and June, 1985, the sheriff's office in Upshur County began an undercover operation to investigate drug-related offenses, some of which were believed to be occurring on the campus of West Virginia Wesleyan College. The investigation involved a "switch program," which involved deputy sheriffs from several counties, working in different counties, posing as prospective drug purchasers.

Jerry McCauley, a deputy sheriff in Randolph County, was assigned to an undercover investigation in Upshur County in May, 1985. McCauley testified at trial that on June 13, 1985, he and Larry Spittler, an informant, went to the appellant's apartment. The appellant's roommate, John Twill, was present at the time. The appellant and Twill told McCauley and Spittler that within a couple of days the appellant and Twill would have a quarter-pound of marihuana. On June 19, 1985, McCauley and Spittler returned to the appellant's apartment. Upon arriving, Twill was coming out of the apartment. Twill told McCauley and Spittler that there was only

a quarter-ounce of marihuana left inside. McCauley and Spittler went inside and met the appellant and Robert Nicholas, a friend of the appellant. After conversing for a few minutes, the appellant was asked if he had the marihuana. He replied that he did and asked McCauley and Spittler how much they wanted. McCauley replied, "a quarter ounce." The appellant went into another room and returned with a bag of marihuana. McCauley asked the appellant how much money he wanted for the marihuana. The appellant said twenty-five dollars, which McCauley gave to the appellant. The State's evidence at trial indicated that the amount of marihuana delivered was 5.8 grams.

The appellant testified at trial that he never sold McCauley marihuana. He also testified that his roommate, John Twill, bought and sold drugs frequently, and on one occasion during the summer of 1985, the appellant "handed" drugs to someone who purchased from Twill. However, the appellant testified that this was not what happened in this case with Deputy McCauley.

The appellant also testified that his friendship with Robert Nicholas had ended prior to the summer of 1985, and therefore, the appellant was never alone with Nicholas in the appellant's apartment, as alleged by the State. Furthermore, the appellant testified that the building in which his apartment was located was frequented by several people throughout the summer of 1985.

The appellant was convicted of delivery of a controlled substance, with remuneration, in violation of *W.Va.Code*, 60A-4-401(a) [1983],[1] and was sentenced to the West Virginia Penitentiary for one to five years.

## II

The appellant contends that the indictment in this case was insufficient to support his conviction of delivery of a controlled substance, *with remuneration.*

Specifically, the appellant maintains that because the indictment failed to allege that the delivery took place "with remuneration," the appellant's conviction should be set aside. We do not agree with this contention.

The indictment in this case alleged that the appellant, "on the 19th day of June, 1985 did unlawfully and feloniously deliver a controlled substance, to-wit: marihuana, listed in Schedule I [60A-2-204(d)(13)], in violation of the provisions of Chapter 60A, Article 4, Section 401(a) of the West Virginia Code, as amended[.]"

The appellant claims that an important factor in alleging a violation of *W.Va.Code*, 60A-4-401(a) is whether the offense was committed "with remuneration" or "without remuneration." Therefore, the appellant maintains that whether or not remuneration was involved should be set forth in the indictment.

*W.Va.Code*, 60A-4-402(c) provides: "Notwithstanding any other provision of this chapter to the contrary, any first offense for distributing less than 15 grams of marihuana without any remuneration shall be disposed of under section 407 [§ 60A-4-407]."

*W.Va.Code*, 60A-4-407 [1971] provides:

Whenever any person who has not previously been convicted of any offense under this chapter or under any statute of the United States or of any state relating to narcotic drugs, marihuana, or stimulant, depressant, or hallucinogenic drugs, pleads guilty to or is found guilty of possession of a controlled substance under section 401(c) [§ 60A-4-401(c)], the court, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place him on probation upon terms and conditions. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall dis-

---

1. *W.Va.Code*, 60A-4-401(a) [1983] provides: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

charge the person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for second or subsequent convictions under section 408 [§ 60A–4–408]. The effect of such dismissal and discharge shall be to restore such person in contemplation of law to the status he occupied prior to such arrest and trial. No person as to whom such dismissal and discharge have been effected shall be thereafter held to be guilty of perjury, false swearing, or otherwise giving a false statement by reason of his failure to disclose or acknowledge such arrest or trial in response to any inquiry made of him for any purpose. There may be only one discharge and dismissal under this section with respect to any person.

After a period of not less than six months which shall begin to run immediately upon the expiration of a term of probation imposed upon any person under this chapter, such person may apply to the court for an order to expunge from all official records all recordations of his arrest, trial, and conviction, pursuant to this section. If the court determines after a hearing that such person during the period of such probation and during the period of time prior to his application to the court under this section has not been guilty of any serious or repeated violation of the conditions of such probation, it shall enter such order.

The appellant correctly points out that this Court has noted the significance of the statutory provisions which allow less severe penalties for drug offenses not involving remuneration.

In *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975), it was stated:

This Court takes notice of the pervasive abuse of controlled drugs among adolescents and young adults too inexperienced to be aware of the dangers of narcotics. The Uniform Controlled Substance Act, *W.Va.Code,* 60A–4–401(c) and 60A–4–407 [1971] recognize this problem by making first offense possession of under 15 grams of marijuana a misdemeanor with mandatory probation. Particularly in college localities, many young people are likely to find themselves on premises leased or owned by others of their own age group on which controlled substances may be found.

*Id.,* 158 W.Va. at 643–44, 213 S.E.2d at 467.

Furthermore, in syllabus point 2 of *State v. Carper,* 176 W.Va. 309, 342 S.E.2d 277 (1986), we held that "W.Va.Code, 60A–4–402(c), mandates that a defendant guilty of a first offense for distributing less than fifteen grams of marihuana without any remuneration is entitled to mandatory probation under W.Va.Code, 60A–4–407."

Obviously, legislative enactments and judicial decisions confront the critical nature of remuneration in regard to first offense violators of certain provisions of *W.Va. Code,* chapter 60A.

■ However, we have been consistent in our holdings that "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syl. pt. 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983). *Accord,* syl. pt. 1, *State v. Mullins,* 181 W.Va. 415, 383 S.E.2d 47 (1989); syl. pt. 1, *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982); *see also State v. Eden,* 163 W.Va. 370, 387, 256 S.E.2d 868, 878 (1979); syl. pt. 3, *State v. Slie,* 158 W.Va. 672, 213 S.E.2d 109 (1975); syl. pt. 3, *Pyles v. Boles,* 148 W.Va. 465, 135 S.E.2d 692 (1964); *State v. Younger,* 130 W.Va. 236, 239, 43 S.E.2d 52, 53 (1947).

■ The indictment in this case alleged that the appellant violated *W.Va.Code,* 60A–4–401(a). As noted, it did not, in any way, refer to remuneration. In syllabus point 1 of *State v. Meadows,* 170 W.Va. 191, 292 S.E.2d 50 (1982), we held that "[a]n indictment that follows the language of W.Va.Code, 60A–4–401(a), is sufficient

on its face." Based upon this holding, it is clear that it is not necessary for an indictment, such as the one in this case, to allege that the offense was committed with remuneration.

■ The indictment in this case followed the statutory language of *W. Va. Code*, 60A–4–401(a) [1983], and although it failed to allege "with remuneration," the evidence presented at trial proved that the appellant delivered marihuana, with remuneration. The appellant denied committing the offense altogether.

Therefore, because the indictment followed the language of *W. Va. Code*, 60A–4–401(a) [1983], it was sufficient to support the appellant's conviction in this case.

The appellant's contention would indicate that remuneration is an element of a conviction under *W. Va. Code*, 60A–4–401(a) [1983]. Obviously, the legislature never intended to include such an element.

We compare the probation provisions of *W. Va. Code*, chapter 60A with *W. Va. Code*, 62–12–2 [1986].[2] Pursuant to *Code*, 62–12–2(c)(1), an indictment for a felony must include the fact that a firearm was used in the commission of the crime. This statutory provision does not make the use of a firearm an *element* of the felony for which the defendant is indicted, but it is merely a *fact* that the legislature has required which must be included in the indictment.

In contrast, the legislature has not required that an indictment alleging a violation of *W. Va. Code*, 60A–4–401(a) [1983] include whether the offense was committed with or without remuneration. We will not judicially impose such a requirement.

Accordingly, an indictment alleging a violation of *W. Va. Code*, 60A–4–401(a), as

amended, is sufficient to sustain a conviction for delivery of marihuana, even though the indictment omits stating whether the alleged offense was committed with or without remuneration.

### III

The appellant contends that the circuit court committed error by failing to submit a verdict which would allow the jury to find the appellant guilty of delivery of a controlled substance without remuneration.

Two verdict forms were submitted to the jury. The first verdict form included the words "with remuneration," and provided for a "guilty" verdict. The other verdict form merely provided for a "not guilty" verdict. There was no verdict form submitted which provided for a guilty verdict which included the words "without remuneration." The appellant contends that the circuit court's failure to submit a verdict form stating "without remuneration" constitutes reversible error.

We need not address this contention because it is clear that this assignment of error was not preserved at trial. The following exchange occurred:

THE COURT: ... Now, the form of verdict; have you seen the form of verdict, both sides?

MR. ROSS [prosecutor]: Yes, sir.

MR. THOMPSON [defense counsel]: Yes, Your Honor.

THE COURT: Any objections to the form of verdict?

MR. ROSS: None, Your Honor.

MR. THOMPSON: No objection, Your Honor.

---

2. *W. Va. Code*, 62–12–2 [1986] provides, in pertinent part:

(b) The provisions of subsection (a) of this section to the contrary notwithstanding, any person who commits or attempts to commit a felony with the use, presentment or brandishing of a firearm shall be ineligible for probation. . . .

(c) (1) The existence of any fact which would make any person ineligible for probation under subsection (b) of this section because of the commission or attempted commission of a felony with the use, presentment or brandishing of a firearm shall not be applicable *unless such fact is clearly stated and included in the indictment* or presentment by which such person is charged *and* is either (i) found by the court upon a plea of guilty or nolo contendere, or (ii) *found by the jury*, if the matter be tried before a jury, *upon submitting to such jury a special interrogatory for such purpose* or (iii) found by the court, if the matter be tried by the court, without a jury. (emphasis supplied)

THE COURT: All right. Then, that's the form of verdict we'll use.

Trial Tr. 185.

In syllabus point 17 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), this Court stated:

As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.

It is clear from the record that the appellant failed to preserve this assignment at trial. Consequently, there is no error in this regard.[3]

### IV

The appellant contends that the circuit court committed error by failing to instruct the jury on the elements of knowledge and intent.[4]

"An instruction that defines a crime but omits an essential element of the crime

may constitute reversible error." *State v. Barker*, 176 W.Va. 553, 558, 346 S.E.2d 344, 349 (1986). In syllabus point 2 of *State v. Barnett*, 168 W.Va. 361, 284 S.E.2d 622 (1981), we held that "[i]n a criminal trial for violation of Code, 60A–4–401(a), the jury must be instructed about each element of the crime including intent." In *Barnett*, we relied on *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), wherein we stated: "[W]here the defendant is charged with delivery of a controlled substance, a felony carrying serious penal sanctions, the trial court should have instructed on these essential elements of knowledge and intent. Such a holding is actually a necessary implication inherent in the statutory wording." *Id.* 162 W.Va. at 72–73, 246 S.E.2d at 252 (citation omitted).

The appellant relies upon *Barnett* and *Dunn* as holdings which support his contention that the trial court failed to instruct the jury on the element of intent. We disagree.

In *Barnett* and *Dunn*, the instructions complained of did not mention "intent" at all.[5] In the case now before us, the critical

---

**3.** We note that at sentencing, counsel for the appellant raised the issue of the insufficiency of the verdict forms. However, raising this assignment at sentencing was not timely to preserve it.

**4.** The full text of State's Instruction No. 2, as amended, is as follows:

The Court instructs the jury that it is unlawful for any person to manufacture, deliver, or possess *with intent* to manufacture or deliver a controlled substance, and that any person who manufactures, delivers, or possesses *with intent* to manufacture or deliver a non-narcotic controlled substance classified in Schedules I, II or III, including marihuana, be guilty of a felony, and the Court further instructs the jury that if you believe from all of the evidence in this case, beyond a reasonable doubt, that the Defendant, Keith Lawrence Nicastro, did, on the 19th day of June, 1985, in Upshur County, West Virginia, deliver a controlled substance, namely, marihuana, for remuneration then you should find the Defendant, Keith Lawrence Nicastro, guilty of delivery of a controlled substance for remuneration, a Felony as charged in the Indictment herein.

(emphasis supplied)

We note that the appellant neither objected to State's Instruction No. 2, as amended, nor offered to the circuit court an instruction which

included the elements of intent or knowledge. We address the appellant's contention in this regard, however, because the duty to give such an instruction is on the trial court. Syl. pt. 2, *State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979).

**5.** In the two proceedings involved in *Barnett*, the instruction to the juries stated that " 'if they believe from all the evidence beyond a reasonable doubt, that the accused, at the time and place alleged in the indictment herein, committed the crime charged against him in said indictment, then they should find him guilty as charged in the indictment herein.' " 168 W.Va. at 363–64, 284 S.E.2d at 623.

Similarly, the instruction complained of in *Dunn* stated:

'The Court instructs the jury that if they believe beyond all reasonable doubt from the evidence that the defendant, Jesse James Dunn, on the 11th day of October, 1974, delivered to William McCormick, Jr. for remuneration, a controlled substance, namely Lysergic Acid Diethylamide (LSD), then they must find the said defendant, Jesse James Dunn, guilty of a felony.'

162 W.Va. at 72 n. 2, 246 S.E.2d at 251 n. 2. Obviously, no mention of intent is made in these instructions.

element of intent was included twice within State's Instruction No. 2, as amended. *See supra* note 4.

Therefore, there was no error committed by the circuit court in this regard.

## V

Finally, the appellant contends that the circuit court abused its discretion in sentencing him to one to five years in the state penitentiary. In so contending, the appellant sets forth several reasons supporting probation over incarceration: (1) twelve letters written to the circuit court judge, on behalf of the appellant, regarding the appellant's good character and reputation; (2) the probation officer recommended probation due to the appellant's work skills and lack of a prior criminal record; (3) a contention that the circuit court judge did not seriously consider probation, but imposed an unreasonable sentence to fulfill campaign promises; (4) the circuit court judge denied probation to all indictees under the September 13, 1985 drug-related indictments, in which the appellant was included; (5) the crime was nonviolent; and (6) there is no evidence that the appellant is considered a drug trafficker.

The State opposed probation because the appellant was convicted of a felony.

"[T]he matter of probation is within the sound discretion of the trial court." *State v. Miller,* 172 W.Va. 718, 720, 310 S.E.2d 479, 481 (1983). *See also W.Va.Code,* 62–12–3 [1988]; *State v. Turley,* 177 W.Va. 69, 73, 350 S.E.2d 696, 700 (1986); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 320, 305 S.E.2d 268, 276 (1983).

There is an emerging body of authority which sets forth guidelines which trial courts should follow and factors which trial courts should consider in sentencing defendants convicted of drug-related offenses. These factors include the aggravating and mitigating circumstances of the particular offense.

It has been held that an imposed sentence was excessive where there was no evidence that the defendant was a large-scale drug distributor or that he sold drugs for reasons other than supporting his own habit. *State v. Gordon,* 444 So.2d 1188, 1191 (La.1984). Similarly, the Supreme Court of Kansas has held that prior felony convictions may be considered in sentencing a defendant convicted of illegal possession and sale of marihuana. Syl. pt. 4, *State v. Coutcher,* 198 Kan. 282, 424 P.2d 865 (1967). *See also People v. Bell,* 53 Ill.2d 122, 130, 290 N.E.2d 214, 219 (1972). Another factor that courts will consider in sentencing is the defendant's history of involvement with drugs. *State v. Garza,* 109 Idaho 40, 46, 704 P.2d 944, 950 (Ct. App.), *petition for review denied* (Idaho Nov. 20, 1985). *See Davis v. State,* 577 P.2d 690, 694 (Alaska 1978); *State v. Fischer,* 108 Ariz. 325, 327, 498 P.2d 147, 149 (1972); *People v. Gama,* 33 Ill.App.3d 869, 870, 338 N.E.2d 583, 584–85 (1975); *State v. Koch,* 188 Neb. 392, 393, 196 N.W.2d 910, 911 (1972). Whether the controlled substance involved is of a type which creates a severe community problem may also be considered in sentencing. *People v. Douglas,* 58 Ill.App.3d 149, 154, 15 Ill.Dec. 701, 705, 373 N.E.2d 1385, 1389 (1978). Sentences have been held excessive where the defendant's prospects for rehabilitation are reasonably good and incarceration would serve no useful purpose for the defendant, convicted of a drug-related offense. *State v. Carter,* 21 Conn.Supp. 426, 428–30, 158 A.2d 862, 864 (Super.Ct.1958); *People v. Kane,* 31 Ill.App.3d 500, 513, 333 N.E.2d 247, 257 (1975); *People v. Winters,* 25 Ill.App.3d 1056, 1059, 324 N.E.2d 248, 251 (1975); *State v. Brennan,* 115 N.J.Super. 400, 407–08, 279 A.2d 900, 904 (App. Div.1971). *See generally* 21 Am.Jur.2d *Criminal Law* § 539 (1981 and Supp.1989).

The foregoing factors, held by courts to be considered in sentencing persons convicted of drug-related offenses, do not distinguish between *amounts* of illegal drugs involved. We view these factors as important guidelines in sentencing persons convicted of drug-related offenses, but especially important in situations where the illegal drug was marihuana, the amount delivered was less than 15 grams, and the

conviction is the defendant's first criminal offense.

■ Therefore, we hold that prior to imposition of a sentence of incarceration for a defendant convicted of delivery of less than 15 grams of marihuana in violation of *W. Va. Code,* 60A–4–401(a), as amended, who, although not within the "without remuneration" exception of *W. Va. Code,* 60A–4–402(c), as amended, has no prior criminal record, a trial court must consider: (1) whether the defendant has a history of involvement with illegal drugs; (2) whether the defendant is a reasonably good prospect for rehabilitation; (3) whether incarceration would serve a useful purpose; and (4) whether available alternatives to incarceration, such as probation conditioned upon community service, would be more appropriate.[6]

The facts in this case indicate that the appellant was convicted of delivery of less than 15 grams of marihuana. As discussed previously in this opinion, 15 grams is significant in determining whether a person convicted under *W. Va. Code,* chapter 60A will be entitled to probation and possibly removal of such conviction from the person's criminal record. Furthermore, there is no evidence that the appellant was involved in drug trafficking.

Our holding today is in no way intended to diminish the factors that a trial court already considers in sentencing. Whether the defendant is convicted of delivery with or without remuneration, as well as the amount of remuneration, remains critical in sentencing. However, this is not the only factor a trial court should consider. Rather, the matter of remuneration should be carefully weighed with the other factors which we have set forth. The recommendation of the probation officer, of course, is not to be lightly regarded by the trial court in sentencing.

We are concerned with the degree of harshness that may be reflected in the circuit court's sentence in this case.[7] Unarguably, drugs are a serious problem in our society today, literally taking the lives of some and ruining the lives of others. The circuit court's discretion in sentencing for drug-related offenses is not something that this Court is quick to intrude upon.[8] We are not convinced, however, that the factors which we have set forth in this opinion were properly weighed in deciding the appellant's sentence.

We believe it is worth noting it has been pointed out that recently, "attitudes toward crime and justice show that public officials and criminal justice personnel 'erroneously perceive the public to be more punitive and thus less receptive to alternatives [to prison] than is actually the case.'" Shein and Jopson, *Sentencing Drug Offenders: The Need to Sensitize the Sentencing Judge,* 24 Crim.L.Bull. 146, 147 (1988) (*quoting* The Public Agenda Found., *Crime and Punishment: The Public's View* (Sept. 1986)). This attitude reveals, in part, our concern with the adverse effects that being confined in prison *may* have on the incarcerated person, which would be unfortunate, considering the incarcerated person's

6. The circuit court should not consider any one of these factors to the exclusion of any other factor. Rather, the circuit court should give weight to *every* factor.

7. We find it noteworthy that under the guidelines for sentencing in federal courts, promulgated by the United States Sentencing Commission, the appellant in this case would have received a sentence of only 0–6 months incarceration, and would have been eligible for probation, because the amount of marihuana involved was less than 250 grams. These guidelines have recently been held constitutional by the United States Supreme Court in *Mistretta v.*

*United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

8. Although not an issue before this Court, we are also concerned with the potential of disparity among the circuits throughout the State in sentencing for drug-related offenses. Under a complete factual development, such disparity could become an issue. This type of disparity among federal courts was a primary concern which led to the enactment of uniform guidelines for federal sentencing, promulgated by the United States Sentencing Commission. Cf. *State v. Buck,* 173 W.Va. 243, 246, 314 S.E.2d 406, 410 (1984) (disparate sentences for co-defendants).

probability of becoming a productive member of society when released.

In some cases, probation is a viable alternative to sentencing. As Judge Haymond pointed out in 1968, "probation is simply one of the devices of an enlightened system of penology which has for its purpose the reclamation and rehabilitation of the criminal." *State ex rel. Strickland v. Melton,* 152 W.Va. 500, 506, 165 S.E.2d 90, 94 (1968). *Accord, State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 319, 305 S.E.2d 268, 275 (1983).

We encourage a circuit court to consider alternatives to sentencing, including community service, if it is warranted in the case before the circuit court. *W.Va.Code,* 62–12–3 [1988] authorizes a circuit court to impose community service as a condition of probation. Community service has become a common alternative to sentencing. "The imposition of community service sanctions by sentencing judges and the development of community service programs have greatly outdistanced legislative activity explicitly authorizing their use." Harland, *Court-Ordered Community Service in Criminal Law: The Continuing Tyranny of Benevolence?* 29 Buffalo L. Rev. 425, 440 (1980). *See also* 3 *Standards for Criminal Justice* § 18–2.3(f)(x) (ABA 2d ed. 1979 and Supp. 1986). Hence, if community service is an alternative for the particular case, we recommend that the circuit court seriously consider it in lieu of incarceration.[9]

■ We remand this case to the Circuit Court of Upshur County so that it may again consider the appellant's sentence, properly considering the factors which we have set forth herein, to ensure that the sentence imposed is not unduly harsh.

Accordingly, the judgment of the Circuit Court of Upshur County is affirmed in part, and this case is remanded for reconsideration of sentencing in accordance with the principles set forth in this opinion.

Affirmed in part; Remanded for reconsideration of sentencing.

WORKMAN, Justice, dissenting:

I concur in the majority's affirmation of the appellant's conviction, but must dissent with regard to the remand for reconsideration of sentencing.

The sentence imposed by the circuit judge obviously was a stringent one under all the facts and circumstances of the case to which this Court is privy. As a matter of fact, based on the information included in the record on appeal, were I still a circuit judge and presiding over this case, I would have placed the appellant on probation. But this is *not* the sentencing court.

For far too long this Court has frequently and routinely substituted the judgment of the trial court judge with its own. The law of the State of West Virginia affords the trial court judge in this case the discretion to impose the sentence that he did. *W.Va.Code* §§ 60A–4–401 [1983]. Furthermore, the standard for probation is set forth *W.Va.Code* § 62–12–3 [1988] which provides, in part,

> Whenever, upon the conviction of any person eligible for probation under the preceding section [§ 62–12–2], it shall appear *to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned,* the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article.... (emphasis added)

There is nothing in the record to indicate that the circuit judge did not already consider the factors enumerated in syllabus point 6 of the majority's opinion. In addition, there are probably many other facts

---

9. Community service, if appropriate under the circumstances, is an attractive alternative to incarceration in two key respects: First, it obviously involves engaging in activities from which many will benefit; secondly, it does not aggravate the longstanding problem of overcrowded prisons. This second reason is especially crit-

ical in West Virginia, where the conditions at the state penitentiary have recently been held unconstitutional by this Court. *Crain v. Bordenkircher,* 180 W.Va. 246, 376 S.E.2d 140 (1988). *See also* Kessel, *Prisoners' Rights: Unconstitutional Prison Overcrowding,* 1986 Ann.Surv. Am.L. 737 (Nov.1987).

and circumstances in his knowledge which are not within this Court's knowledge. He saw the testimony of the witnesses, including the defendant, their demeanor and credibility; and he had the opportunity to discern the degree of responsibility the defendant accepted and to know the sentiment of the community in his jurisdiction far better than we. The remand is nothing but a loosely veiled directive to "Do it our way," and it is time for the Supreme Court to begin to recognize and respect the limits the law places on their authority.

Our laws do not repose in the Supreme Court of Appeals the authority to substitute its own judgment for that of every other judicial officer at every layer of the legal system. For too long this Court has been too quick to classify any decision it disagrees with as an abuse of discretion.

Circuit Judges are not automatons. They are vested with a great deal of authority and discretion and possess a tremendous amount of power over people's lives. They are elected by the people. Like most elected officials, there are some with greater wisdom, ability, and judicial temperament than others. Whether they act in accordance with *our* perception of good judgment if we were vested with their responsibilities should not be the question. The question should be whether they act within the law and their discretion thereunder.

Lastly, much is made by the appellant of the fact that the trial court judge has made a commitment to deal with drug offenders in a stringent manner. However, our society is moving to the growing realization that the casual use of drugs, once thought harmless, bolsters and supports the human destruction that the large drug trade is wreaking in this nation. The people of Upshur County may have held this philosophy when they elected this circuit judge. He is the person empowered by law to have made this sentencing decision and, absent an abuse of discretion, it should not be disturbed on appeal.